IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RANDY T. DAVIS, SR.,

    Plaintiff,

    v.

CAPT. ISHMAEL WILLIAMS,

    Defendant.

Civil Action: MJM-22-2609

**<u>MEMORANDUM OPINION</u>**

Plaintiff Randy T. Davis Sr. filed a civil rights Complaint, pursuant to 42 U.S.C. § 1983, which he subsequently amended as directed by the Court. ECF Nos. 1, 7 & 10. Davis also filed a supplement to the Amended Complaint which was served on the defendant and is included in the operative pleadings. ECF Nos. 12 & 16. Defendant Capt. Ishmael Williams moves to dismiss the Amended Complaint or, alternatively, for summary judgment in his favor. ECF No. 28. Davis was advised of his opportunity to respond to the dispositive motion, and did so, and Defendant has filed a reply. ECF Nos. 29, 30 & 34. No hearing is necessary to determine the matters pending. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons stated below, Defendant Williams's motion will be granted in part, and denied in part, as to summary judgment, and denied as to a motion to dismiss. ECF No. 28.

## I.    BACKGROUND

Davis states that he is 59 years old and housed in one of the oldest facilities in the Maryland Division of Corrections. ECF No. 10 at 6. During the COVID-19 pandemic, he was moved from a cell that he shared with one person to the B-wing dorm at Patuxent Institution in Jessup, Maryland that housed 60 inmates. ECF No. 10 at 2, 5. The inmates in the dorm were a mix of people who

had either taken or refused the COVID-19 vaccine.  ECF No. 12 at 2. Beginning in November 2021, and continuing for over six months, there was no hot water for showers and hand washing, and the dorm was infested with mice droppings and roaches.  ECF No. 10 at 2, 4–5; ECF No. 12 at 2.  Davis filed a request for an Administrative Remedy Procedure ("ARP") on January 9, 2022, pertaining to the lack of hot water.  ECF No. 10 at 4.  On March 30, 2022, the Warden found the ARP "meritorious in part," acknowledging that the hot water system could not be repaired and that a new steam generator was ordered and would be installed when received.  ECF No. 12-2 at 1.  Davis was named dorm representative, and Williams seemed to "have a problem" with this appointment.  ECF No. 10 at 6.  Williams was told that there were issues of sanitation and hygiene in the dorm and that the dorm had no running hot water.  *Id.* Davis believes he was punished for being the dorm representative.  *Id.* at 9.

In March 2022, Davis requested to be moved out of the dorm to another housing unit because he felt unsafe with the conditions in the dorm due to his age.  *Id.* at 6.  Williams denied this request "many times."  *Id.*; ECF No. 12 at 2.

In April 2022, Davis became sick with a respiratory illness that caused blood in his urine and pain on his side for days at a time.  ECF No. 10 at 6; ECF No. 12 at 2.  Davis asked Williams to send him to the medical unit, and the request was denied.  ECF No. 10 at 6–7; ECF No. 12 at 2.  At this time, Williams told Davis to move from his "personal space" and advised Davis that he was going to receive a notice of a disciplinary infraction for threatening an officer.  ECF No. 10 at 6; ECF No. 12 at 2; ECF No. 12-1 at 1.  Davis was taken to "lock-up" and received a notice of rule violations written by Williams.  ECF No. 10 at 6; ECF No. 10-1 at 1. Williams alleged "false" and "fraudulent" rule violations, including that Davis had used racially derogatory language.  ECF No. 10 at 5-6; ECF No. 10-1 at 1; ECF No. 12 at 3.  Davis was charged with four rule violations:

engaging in a disruptive act; making threats; interference with or resisting a search of a person, item, area, or location; and disobeying an order.  ECF No. 10-1 at 1. Davis was found guilty of one charge of making threats, the other charges were dismissed, and he received a penalty of 30 days in segregation and 60 days of time credit revocation.  *Id.* at 5.

Davis states that he was initially placed on administrative segregation and remained on administrative segregation at the time he filed his Amended Complaint, after seven months.  ECF No. 10 at 5.  Davis has been kept in this status for requesting "protection" from inhumane conditions.  *Id.*; ECF No. 12 at 3.  Davis alleges generally that Williams made "other harassments" in September and October 2022.  ECF No. 10 at 5.  Davis states that as of January 16, 2023, he was still being held in "harmful" conditions, and had been since May 17, 2022.  ECF No. 12 at 3.

## II.    STANDARD OF REVIEW

Williams asserts that the Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, that summary judgment should be granted pursuant to Fed. R. Civ. P. 56.  ECF No. 28.

A motion to dismiss styled in the alternative as a motion for summary judgment implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where the plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When a movant expressly captions its motion to dismiss "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration,

the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261.

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 10 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (cleaned up). And though district courts have a duty to construe self-represented pleadings liberally, a plaintiff must nevertheless allege facts that state a cause of action.  *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir.1985) (duty to construe liberally does not require courts to conjure up questions never squarely presented).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir.

2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Henry v. Purnell*, 652 F.3d 524, 548 (4th Cir. 2011)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "[I]n ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (quoting *Anderson*, 477 U.S. at 255) (second alteration in original). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

The Court is mindful, however, that Davis is a self-represented litigant. A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But liberal construction does not mean that a court can "ignore an obvious failure to allege facts setting forth a plausible claim for relief." *Sheehan v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) (citing *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990)). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

Williams asserts in his motion that Davis failed to exhaust the grievance process and has also failed to state a claim for relief. ECF No. 28. The motion attaches exhibits that relate specifically to Davis's efforts to exhaust the grievance process. ECF Nos. 28-4 & 28-5. The portion of the motion that relates to Williams's exhaustion defense will be construed as a motion for summary judgment. The portion of the motion that asserts that Davis has failed to state a claim

for relief does not reference any material outside the pleadings and will be construed as a motion to dismiss.

## III.   DISCUSSION

### A.  Exhaustion

Williams asserts that Davis's complaint should be dismissed because he failed to exhaust the grievance process as to any of his claims.  As noted, the Court will assess the exhaustion defense as a motion for summary judgment.  If Davis's claims have not been properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.

The PLRA provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Id*. § 1997e(h).  The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust

administrative remedies is an affirmative defense to be pleaded and proven by defendants.  *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017).

The Court may dismiss a claim on this ground only if "the defendants raise the issue as an affirmative defense and the inmate has had an opportunity to respond to the affirmative defense" or in "the rare, exceptional instance where administrative exhaustion"—or lack thereof—is "apparent on the complaint's face." *Custis*, 851 F.3d at 362 (citing *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008)).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies.  *Moore*, 517 F. 3d at 729; *see also Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory.").    Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).  This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).' " *Id.* at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).  Although the PLRA requires the prisoner to exhaust available remedies, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution."  *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), § 10-201 *et seq*.; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP).  The

grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth in C.S. Title 10, Subtitle 2. C.S. § 10-210(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. C.S. § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See* C.S. § 10-206(b). When the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official." COMAR 12.02.28.05(D)(1). "Managing official" is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and is defined under C.S. § 1-101(m) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.02.28.09(B).

8

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame.  The prisoner has 30 days to file an appeal to the Commissioner of Corrections.  COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.[1]   COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B). When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response.  COMAR 12.07.01.04(B)(9)(a).  If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing."  C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.S. § 10-208; COMAR 12.07.01.07-.08.  The conduct of such hearings is governed by statute.  *See* C.S. § 10-208; COMAR 12.07.01.07(D); Md. Code Ann., State Gov't § 10-206(a)(1).

A decision of the administrative law judge ("ALJ") denying all relief to the inmate is considered a final agency determination.  C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2). However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency

---

[1]  If the Commissioner fails to respond, the grievant shall file their appeal within 30 days of the date the response was due.  COMAR 12.07.01.05(B)(2).

determination within fifteen days after receipt of the proposed decision of the ALJ.  *See* COMAR 12.07.01.10(B); C.S. § 10-209(b)(2)(c).

The final agency determination is subject to judicial review in Maryland state court, so long as the claimant has exhausted his remedies.  *See* C.S. § 10-210.  An inmate need not, however, seek judicial review in state court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g.*, *Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

Finally, the ARP process does not apply to complaints relating to prisoner disciplinary procedures and decisions. COMAR 12.02.28.04(B)(3).  If a prisoner is found guilty of a rule violation, the prisoner is entitled to appeal the hearing officer's guilty decision or sanction to the warden of the facility where he or she is incarcerated.  COMAR 12.03.01.30(A)(1),(2).  If the prisoner does not file a written appeal with the warden within fifteen days of receipt of the hearing officer's decision, he is considered to have waived the right to appeal. COMAR 12.03.01.30(A)(3). If the warden affirms the hearing officer's guilty finding or sanction, the prisoner may then appeal to the IGO.  COMAR 12.03.01.30(C); *see also* COMAR 12.07.01.05 and .08.  When filing this appeal with the IGO, the prisoner is required to include a copy of the initial notice of inmate rule violation, the hearing record, the appeal to the warden, and the warden's response to the appeal. COMAR 12.07.01.04(B)(9)(b).

Williams argues that Davis failed to exhaust available administrative remedies. In support of the motion, Williams submits one exhibit, the declaration of F. Todd Taylor, Jr., the Executive Director of the IGO for DPSCS.  ECF No. 28-4.  Taylor states that he was asked to conduct a search for "any and all" grievances filed by Davis with the IGO.  *Id.* ¶ 3. Taylor states, "I searched the records of the IGO, and found that Randy T. Davis, Sr. filed a grievance as an appeal of a

decision issued in [ARP] case no. ARP-PATX-0025-22 on June 21, 2022." *Id.* ¶ 4.  This ARP number corresponds with the ARP Davis submitted with his Amended Complaint.  ECF No. 10-1 at 11.  The ARP is dated January 8, 2022, as an emergency request to complain about the lack of hot water for the prior 30 days, in which Davis also states that he has been "punished" each time he seeks protection.  ECF No. 10-1 at 11.

Davis's appeal to the IGO, referencing this same ARP number PATX-0025-22, is attached as an exhibit to Taylor's declaration.  ECF No. 28-5 at 3-5. The appeal is in the form of a letter from Davis dated May 20, 2022, stating that no appeal form was available and he was filing the letter in lieu of using the form.  ECF No. 28-5 at 3.  The document is marked as received by the IGO on June 21, 2022.  *Id.*  Davis states in his IGO appeal that he has been punished by the supervisor after complaining about the conditions of his confinement, and has since received a false notice of infraction and placed on lock up.  *Id.*

Taylor states that on June 30, 2022, the IGO notified Davis that his appeal did not include necessary paperwork and his grievance could not be processed.  ECF Nos. 28-4, ¶ 3.  The IGO sent Davis a notice of the paperwork required as: the original complaint to the Warden, any response from the Warden, any appeal to the Commissioner, any receipt from the Commissioner, and any response from the Commissioner.  ECF No. 28-5.  Davis was given 30 days to provide either the missing paperwork or an "explanation."  *Id.*; ECF No. 28-4, ¶ 5.  Todd states that Davis then failed to submit the required documentation, and the grievance was administratively dismissed.  ECF No. 28-4, ¶ 6.

Davis attached exhibits with his Amended Complaint and supplement to the Amended Complaint related to his use of the grievance process. ECF No. 10-1 at 6–20; ECF No. 12-2 at 1–

2.  In response to Williams's motion, Davis provides additional exhibits related to the grievance process.  ECF No. 30-3 at 1-7.

Williams's motion will be denied as to the grievance regarding the lack of hot water and retaliation.  There is a clear dispute of fact as to whether Davis's actions constitute a failure to exhaust.   Davis has provided a letter addressed to the IGO dated August 19, 2022, stamped as received by the "Division of Correction ARP/IGO Unit" on August 26, 2022.  ECF No. 10-1 at 15.  This letter references the hot water ARP, number ARP-PATX-0025-22, and Davis states that he has not received a "receipt" and is sending his original papers, as he is unable to make copies. *Id.*  Davis also provides a copy of an ARP appeal to the Commissioner of Correction that is dated June 6, 2022, and is also date stamped as received by the "Division of Correction ARP/IGO unit" on August 26, 2022.  *Id*. at 17.

Davis's documents appear to be responsive to the IGO's request for additional paperwork, yet were not provided by Taylor with his declaration, nor have they been addressed in any way by Williams.   Further, Taylor does not provide either the date that Davis's IGO grievance was dismissed or any document evidencing that Davis was notified that the grievance was dismissed. ECF No. 28-4, ¶ 6.   It is unclear if the IGO had received Davis's response before dismissing the grievance, or if Davis complied with the IGO's request.

Additionally, the Court notes that on May 1, 2022, Davis documented (in what appears to be his appeal from the initial ARP) that he did not have access to his paperwork because it was taken from him when he went to segregation, and because of this, he did not have the ARP number. *See* ECF Nos. 10-1 at 14.  This raises the issue of whether Davis could possibly provide the IGO with the documentation they were requesting and whether the administrative process was truly available to him.  *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (the

12

court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials.").

The Court finds that the grievance record is incomplete as to the lack of hot water and retaliation, and therefore that Williams has failed to establish that Davis did not exhaust administrative remedies.

To the extent Davis alleges any due process violations at his disciplinary hearing, Williams is entitled to summary judgment on this claim.   Taylor attests that Davis filed only an IGO grievance regarding the lack of hot water and retaliation, and Davis has failed to counter this assertion.  The Court finds that Davis has failed to exhaust claims related to due process violations pertaining to the disciplinary hearing.

## B.  Eighth Amendment Conditions of Confinement

Williams asserts that Davis's complaint should be dismissed because he fails to state an Eighth Amendment claim pertaining to the lack of hot water.  In support of this argument, Williams argues that even if Davis's claim is serious or significant, it is "nonetheless insufficient to survive summary judgment," because Davis has not demonstrated how his respiratory infection is connected to any unconstitutional conduct by Williams. ECF No. 28-3 at 11. The Court addresses this argument as a motion to dismiss for failure to state a claim.

To establish a claim of cruel and unusual punishment under the Eighth Amendment, "a prisoner must prove two elements: that 'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that '*subjectively* the officials acted with a sufficiently culpable state of mind.'"  *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Strickler v. Waters,* 989 F.2d 1375, 1379 (4th Cir. 1993) (emphases in original).   Conditions of confinement that "involve wanton and unnecessary infliction of pain," or which "deprive inmates of the minimal civilized

measure of life's necessities," may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The objective prong of a conditions claim requires the prisoner to "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Shakka*, 71 F.3d at 166 (quoting *Strickler*, 989 F.2d at 1381).

Here, Davis pleads that there was no hot water for a six-month period during the COVID-19 pandemic while he was living in a 60-person dorm with unvaccinated individuals. He alleges that these conditions put him at serious risk of injury and that they caused his illness. Such allegations are sufficient to meet the objective prong of a conditions claim.

To establish a sufficiently culpable state of mind, there must be evidence of deliberate indifference such that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U.S. at 302–03 (applying the deliberate indifference standard to conditions of confinement claims). "[T]he test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)); *see also Phoenix v. Amonette*, 95 F. 4th 852, 860 (4th Cir. 2024) (citing *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) ("[A]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a substantial risk of serious harm."). Here, Davis alleges that his efforts to be moved to another location prior to becoming ill and his requests for medical treatment once he became ill were both denied by Williams. These are

sufficient allegations to show that Williams had actual knowledge of the excessive risk of harm to Davis and therefore meet the subjective prong of a conditions claim.

At this juncture, Davis has sufficiently alleged the elements of an Eighth Amendment claim.  Williams's motion to dismiss this claim will be denied.

### C. First Amendment Retaliation Claim

Williams argues that Davis fails to state a First Amendment retaliation claim.  In support of this argument, Williams argues that the notice of disciplinary infraction Davis received was due to his conduct, as evidenced by a guilty finding at a disciplinary hearing, and not the result of retaliation.  ECF No. 28-3 at 13.  This argument too will be addressed as a motion to dismiss.

To state a claim of retaliation for exercising a First Amendment right, a plaintiff must allege that: (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct.  *See Shaw v. Foreman*, 59 F. 4th 121, 130 (4th Cir. 2023); *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017); *Constantine v Rectors & Visitors of George Mason Univ.*, 411 F.3d 479, 499 (4th Cir. 2005).

In assessing a First Amendment claim of retaliation, the question, "from an objective standpoint," is "whether the challenged conduct would 'likely deter a person of ordinary firmness from the exercise of First Amendment rights.'"  *Snoeyenbos v. Curtis*, 60 F. 4th 723, 731 (4th Cir. 2023) (quoting *Constantine*, 411 F.3d at 500).  Thus, "the challenged conduct" must "generate more than a de minimis inconvenience." *Id.* at 730.  Moreover, the Fourth Circuit has stated: "'An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate.'" *Martin v. Duffy*, 977 F. 3d 294, 304 (4th Cir. 2020) (cleaned up)

Here, Davis alleges that Williams retaliated against him for making complaints and holding the role of dorm representative by refusing to move him out of the dorm where he was at risk of harm due to the conditions of confinement, denying his request to be taken to the medical unit when he became ill, and, at the same time, threatening to bring a notice of rule violation against him. ECF No. 10 at 6–9; ECF No. 12 at 2.  Additionally, Davis alleges that Williams then falsely wrote a notice of disciplinary infractions against him and that he was found guilty of one of four charges. ECF No. 10 at 6; ECF No. 10-1 at 1, 5; ECF No. 12 at 3.

At this juncture, Davis has sufficiently alleged the elements of a First Amendment retaliation claim, and Williams's motion to dismiss this claim will be denied.

## IV.    CONCLUSION

For the foregoing reasons, Williams's Motion, ECF No. 28, construed as a motion for summary judgment as to exhaustion, will be denied as to claims pertaining to the lack of hot water and retaliation, and will be granted as to Davis's claims regarding his disciplinary hearing.  Davis's claims related to a lack of due process at his disciplinary hearing will be dismissed without prejudice for failure to exhaust.  Defendant Williams's motion to dismiss will be denied as to his Eighth Amendment conditions claim pertaining to a lack of hot water and First Amendment retaliation claim. Both of these claims may proceed.[2]

A separate Order follows.

DATED:   5/28/24                                          /S/
                                                Matthew J. Maddox
                                                United States District Judge

---

[2]  The Court declines to address Defendant's assertion that Davis has failed to state a Fourteenth Amendment religious freedom claim, finding that Davis has not stated a claim by his passing reference to the Fourteenth Amendment in his Amended Complaint. ECF No. 10 at 5; ECF No. 28-3 at 12-13.  Further, the Court declines to address Defendant's qualified immunity claim at the motion to dismiss stage, which it finds to be premature based on the facts presently in dispute. ECF No. 28-3 at 14–16.